| | | |
|---|---|---|
| BLUE SKY MARINE, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 3:25-cv-321 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | Magistrate Judge Poplin |
| AXIAL DRIVE SYSTEMS, LLC, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motion to Dismiss [Doc. 35] of Defendants Mark McKinney and Pleasurecraft Marine Engine Co., the Motion to Dismiss [Doc. 38] of Defendant Axial Drive Systems, LLC, Plaintiff Blue Sky Marine, LLC's Motion for Leave to File Amended Complaint [Doc. 41], and Plaintiff's Motion to Strike [Doc. 49]. For reasons that follow, the Motion to Dismiss [Doc. 35] of Defendants McKinney and Pleasurecraft will be **GRANTED** and the claims against these Defendants **DISMISSED** for lack of personal jurisdiction. Plaintiff's Motion to Strike [Doc. 49] pertains to the reply brief by McKinney and Pleasurecraft, and will be **DENIED AS MOOT**.

Remaining Defendant Axial does not oppose Plaintiff's Motion for Leave to File Amended Complaint [Doc. 41], which will therefore be **GRANTED IN PART**. Plaintiff will be **ORDERED** to file a revised Second Amended Complaint consistent with this Memorandum Opinion and Order on or before **May 21, 2026**. Axial concedes that its Motion to Dismiss [Doc. 38] is moot if the proposed Second Amended Complaint is authorized, and that Motion [Doc. 38] will therefore be **DENIED AS MOOT**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Blue Sky Marine, LLC, filed its First Amended Complaint ("FAC") [Doc. 32] on October 3, 2025. Plaintiff alleges that on July 6, 2021, Plaintiff, Axial, and Robert Nutt, as Plaintiff's President and CEO, entered into an Asset Purchase Agreement ("APA"). [*Id.* at ¶ 10]. Axial and Plaintiff also entered into an Independent Contractor Agreement (the "ICA") the same day. [*Id.*]. These agreements were negotiated by William Yeargin and others on behalf of Axial, and signed by Yeargin in his capacity as Axial's manager. [*Id.* at ¶ 11].

Pursuant to the APA, Plaintiff transferred to Axial certain assets and intellectual property so that Axial could complete the development of a novel pod drive propulsion system and hull-mountable steerable device for marine vessels, which Plaintiff refers to as "the Pod Drive System." [*Id.* at ¶ 14]. Axial paid $2,090,000 for these assets, and undertook certain obligations relative to the Pod Drive System. [*Id.* at ¶ 15]. It contractually agreed to complete product development, bring the Pod Drive System to market, make royalty payments, and pursue patents for specified intellectual property. [*Id.*]. After completion of final product development and safety testing, Axial agreed to make "good faith, commercially reasonably efforts to make a Qualifying Sale by offering a Pod Drive System Product for sale through its dealer networks to the general consumer market." [*Id.* at ¶ 17].

According to the FAC, Axial, "delegated to Pleasurecraft and McKinney, its president, Axial's performance of its obligations under the APA and the development of the Pod Drive System." [*Id.* at ¶ 28]. Plaintiff alleges that Defendant McKinney met with Robert Nutt at Plaintiff's office in Knox County, Tennessee, to discuss the Pod Drive System, both before and after execution of the APA. [*Id.* at ¶ 30]. McKinney evidently advised Nutt that Pleasurecraft

2

would perform Axial's obligations under the APA. [*Id.* at ¶ 31]. The FAC alleges that as Pleasurecraft's president, McKinney reported directly William Yeargin.[1]

Plaintiff alleges Axial breached the APA by, *inter alia*, failing to complete the development of the Pod Drive System and failing to prepare the Pod Drive System for testing and manufacturing in any substantive way. [*Id.* at ¶ 18]. The FAC further alleges that Axial has not made good faith, commercially reasonable efforts to offer a Pod Drive System Product for sale to the general consumer market. [*Id.* at ¶ 19]. Nor has Axial done anything to obtain patents for the four items of unprotected intellectual property identified in the APA. [*Id.* at ¶ 24].

Plaintiff likewise alleges that Pleasurecraft did not perform Axial's obligations under the APA, as they advised Plaintiff they would do. Instead, Plaintiff alleges "McKinney made the determination that he and Pleasurecraft would not go forward with the Pod Drive System project, and that they would not advance it; rather, McKinney undermined the development of the Pod Drive System . . . in breach of the APA." [*Id.* at ¶ 37]. On February 14, 2024, McKinney allegedly advised Nutt that there was no development work on the Pod Drive System in progress, and none was planned until they found a customer. [*Id.* at ¶ 38]. McKinney also told Nutt that "they had no plan to pursue the additional patents." [*Id.*].

Plaintiff alleges, "upon information and belief," that McKinney "advised and persuaded Yeargin, to whom McKinney reported on the development of the Pod Drive System, and who relied heavily on McKinney's judgment regarding the project, that Axial should not proceed further with the development of the Pod Drive System and obtaining the additional patents." [*Id.* at ¶ 39]. McKinney thereby "induc[ed] Axial to not complete the final product development and

---

[1] Pleasurecraft was wholly owned by a company of which Yeargin was President and CEO. [Doc. 32 at ¶ 29].

safety testing of the Pod Drive System, to not offer the Pod Drive System for sale through its dealer networks to the general consumer market, and to not obtain the issuance of the additional patents, all of which proximately resulted in Axial's breach [of] the APA." [*Id.*].

According to Plaintiff, these actions constitute inducement and/or procurement of breach of contract within the meaning of T.C.A. § 47-50-109, for which Pleasurecraft and McKinney are jointly and severally liable. [*Id.* at ¶ 40]. In the alternative, Plaintiff asserts a claim for common law procurement and/or inducement of breach of contract against Pleasurecraft and McKinney. [*Id.* at ¶¶ 42-43]. From Pleasurecraft and McKinney, Plaintiff seeks treble damages or in the alternative, compensatory damages, of no less than $50 million dollars plus $50 million dollars in punitive damages. [*Id.* at pg. 10]. Against Axial, Plaintiff asserts a claim for breach of contract, seeking damages of no less than $50 million, $50 million in punitive damages, and specific performance of the APA. [*Id.*]. Plaintiff also seeks attorney's fees and interest on any award of compensatory damages. [*Id.* at pg. 10-11].

On September 4, 2025, Defendant Axial filed its first Motion to Dismiss [Doc. 16], and Defendants McKinney and Pleasurecraft filed their own Motion to Dismiss [Doc. 20]. As required by the Court's Order Governing Motions to Dismiss [Doc. 5], both motions included a certification that the parties had conferred to determine whether an amendment to the Complaint [Doc. 1] could cure its deficiencies. [*See* Doc. 16 at 3, Doc. 20 at 2]. The parties subsequently filed a Joint Motion to Stay Discovery [Doc. 28], contending the motions to dismiss raised dispositive issues that required no further discovery. In granting the Joint Motion, the Court required the parties to confer again regarding the Motions to Dismiss [Doc. 16 & 20], so that the issues would be streamlined for the Court's review and the stay of discovery would not unduly delay the litigation. [Doc. 30].

4

While the parties did comply with the Court's order to confer, they apparently did not resolve any of the disputes raised in the dispositive motions, as Plaintiff immediately filed its First Amended Complaint [Doc. 32]. Plaintiff also responded to the pending dispositive motions, but only to argue they were moot due to the filing of the FAC. [Docs. 33 & 34].

Defendants McKinney and Pleasurecraft then filed a Motion to Dismiss the FAC [Doc. 35], as did Axial [Doc. 38]. Plaintiff Blue Sky filed a Motion for Leave to File Second Amended Complaint [Doc. 41], as well as substantive responses to the motions to dismiss [Docs. 42 & 43]. Axial does not oppose the motion to amend [Doc. 47], while Pleasurecraft and McKinney do, arguing amendment is futile and unwarranted [Doc. 48]. Finally, Plaintiff filed a Motion to Strike [Doc. 49] part of Pleasurecraft and McKinney's reply brief [Doc. 45], saying it raises arguments that were not raised in the initial motion to dismiss.

## II. MOTION TO DISMISS BY DEFENDANTS PLEASURECRAFT AND MCKINNEY

Defendants Pleasurecraft and McKinney (in this section, "Defendants"), seek dismissal of the FAC under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim.[2] Because the Court finds that personal jurisdiction is lacking as to both Pleasurecraft and McKinney, it does not reach Defendant's Rule 12(b)(6) argument. The Motion [Doc. 35] will be **GRANTED** and the claims against Pleasurecraft and McKinney will be **DISMISSED** pursuant to Rule 12(b)(2).

---

[2] The parties appear to agree that the proposed Second Amended Complaint does not impact the arguments raised in this Motion to Dismiss [Doc. 35]. *See* [Doc. 50 at ¶ 2] ("The plaintiff's proposed Second Amended Complaint does not change any of the allegations in the plaintiff's First Amended Complaint insofar as Pleasurecraft and McKinney are concerned."); [Doc. 48 at 2] ("The Second Amended Complaint . . . does nothing to address the bases of Pleasurecraft and McKinney's Motion to Dismiss."). Accordingly, in evaluating this motion, the Court has considered only the FAC as the operative pleading.

### a. Standard of Review & Legal Framework

A Rule 12(b)(2) motion involves burden shifting. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). The Sixth Circuit has explained:

> The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Id.* (internal citation and punctuation omitted). In this context, the court reviews the pleadings and other documentary evidence in the light most favorable to the plaintiff, ignoring any controverting assertions of the defendant. *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 478 (6th Cir. 2003). Plaintiff does not contend that either Pleasurecraft or McKinney are subject to general jurisdiction in Tennessee, so the Court considers only specific jurisdiction.

"Specific jurisdiction turns on the 'affiliation between the forum and the underlying controversy.'" *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019) (*quoting Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Tennessee's long-arm statute is "coterminous with the limits on personal jurisdiction imposed by the due process clause," so the Court need only consider whether exercising jurisdiction over Defendants is consistent with federal due process requirements. *Bridgeport*, 327 F.3d at 477 (quoting *Payne v. Motorists' Mut. Ins. Cos.* 4 F. 3d 452, 454 (6th Cir. 1993)). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Sixth Circuit considers three criteria to determine whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Inds., Inc.*, 401 F.2d 374 (6th Cir. 1968). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Int'l Tech. Consultants, Inc. v. Euroglas, S.A.*, 107 F.3d 386, 395-96 (6th Cir. 1997) (*quoting Burger King Corp.*, 471 U.S. at 475).

### b. Positions of the Parties

Defendants argue McKinney and Pleasurecraft have insufficient contacts with the State of Tennessee to be required to defend against this lawsuit in a Tennessee court. [Doc. 36 at 3]. As alleged in the FAC, Pleasurecraft is an Ohio corporation with its principal office in South Carolina, and McKinney is a resident of South Carolina. [Doc. 32 at ¶¶ 3, 4]. Defendants submit the Declaration of Mark McKinney, in which he avers that, relative to dealings with Plaintiff, he travelled to Tennessee three times. [Doc. 22-1 at ¶ 4]. First, "at the request of a Pleasurecraft customer," McKinney visited Plaintiff in Tennessee on behalf of Pleasurecraft on June 3, 2020, "to meet with Mr. Robert Nutt, discuss the pod drive propulsion system, and see Mr. Nutt demonstrate it." [*Id.* at ¶ 9]. He visited Plaintiff and met with Mr. Nutt in Tennessee a second time on March 22, 2021, along with another Pleasurecraft representative. [*Id.* at ¶ 10]. After the APA between Plaintiff and Axial was executed, the only time he traveled to Tennessee to visit Plaintiff was on January 31, 2022. [*Id.* at ¶ 11]. This third time, he went as a representative of Axial, not Pleasurecraft. "These three times are the only times I traveled to Tennessee to meet with anyone

at Blue Sky." [*Id.* at ¶ 12]. He avers that to his knowledge, the June 3, 2020, and March 22, 2021, trips were his only visits with Plaintiff in Tennessee on behalf of Pleasurecraft. [*Id.* at ¶ 13].

As to Pleasurecraft, the June 3, 2020, and March 22, 2021, visits by McKinney, *et alia*, are apparently the only two visits that representatives of Pleasurecraft have made to Tennessee in relation to Plaintiff. [Doc. 22-1 at ¶ 13]. McKinney avers that Pleasurecraft does not maintain any operations or facilities in Tennessee. [*Id.* at ¶ 8]. Defendants show that a small number of visits spanning several years are insufficient to support Tennessee's exercise of jurisdiction over a defendant. [Doc. 36 at 6]; *see Dunn v. Cone*, 2021 WL 3671143, at *3 (6th Cir. March 2, 2021) (four visits to Tennessee over 15 years in which non-resident defendant had a passive role in visits found insufficient to establish purposeful availment).

Plaintiff responds that it has asserted tort claims against Pleasurecraft and McKinney, and that though their alleged wrongdoing occurred outside of Tennessee, it proximately caused damages to Plaintiff within the State. [Doc. 43 at 3-4]. Plaintiff points to T.C.A. § 20-2-214(a)(2), which provides that non-resident defendants are subject to jurisdiction in the courts of Tennessee as to any action or claim for relief arising from, *inter alia*, "[a]ny tortious act or omission within this state." *Id.* Plaintiff argues that "[w]here a defendant commits a tortious act outside the State of Tennessee which proximately causes damages to be sustained within the State, the tort is deemed to have occurred within the State," and T.C.A. § 20-2-214(a)(2) applies. *McCombs v. Cerco Rentals*, 622 S.W.2d 822, 824 (Tenn. App. 1981). But the *McCombs* court went on to explain why the Due Process Clause of the Fourteenth Amendment also permitted the Tennessee

8

state court to exercise personal jurisdiction over the non-resident defendant, something Plaintiff has not done here.[3]

### c. Analysis

Plaintiff misapprehends the relationship between T.C.A. § 20-2-214(a)(2) and the constitutional requirements of due process. Section 20-2-214(a)(2) does not obviate the requirement that personal jurisdiction over a non-resident defendant comport with constitutional due process. "A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—**and** any exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants,* 107 F.3d at 391 (emphasis added). That a Tennessee plaintiff asserts monetary damage from the allegedly tortious conduct of a non-resident defendant is not, standing alone, sufficient to satisfy due process. If it were, personal jurisdiction would be established merely by pleading such a claim.

Plaintiff's response is also inadequate under the burden-shifting framework of a Rule 12(b)(2) motion. Faced with a properly supported Rule 12(b)(2) motion, a plaintiff "may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Malone*, 965 F.3d at 504. Plaintiff has not done so here. No declaration or

---

[3] *McCombs* is otherwise inapposite, as it dealt with a "stream of commerce" theory of personal jurisdiction. In *McCombs*, the non-resident defendant had "indirectly availed itself of the laws of Tennessee by injecting its product into the stream of national commerce through which it was, eventually, in the normal chain of distribution, leased to a Tennessee corporation for use in Tennessee." *McCombs*, 622 S.W.2d 822, at 827. The Supreme Court of Tennessee later referred to *McCombs* as an "outlier" in its personal jurisdiction analysis. *See State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, at 755 n. 30 (Tenn. 2013) ("Tennessee's appellate courts typically apply the minimum contacts test of *International Shoe* . . . and . . . their application of this test is generally consistent with the 'stream of commerce plus' doctrine employed by Justice O'Connor in *Asahi*.").

other evidence was filed, and the response does little more than reference "wrongful activities" by McKinney and Pleasurecraft. Plaintiff does not identify any of these "wrongful activities," nor does it point to any factual allegations that suggest purposeful availment. Indeed, Plaintiff's response never once mentions purposeful availment, which the Supreme Court of the United States has deemed "essential" to the exercise of personal jurisdiction. *Burger King Corp.*, 471 U.S. at 475. There is no argument as to how the cause of action arose from Defendants' activities in Tennessee. Nor does Plaintiff argue that Pleasurecraft or McKinney's actions or the consequences they caused have a substantial enough connection with the forum state to make the exercise of jurisdiction over them reasonable. In short, Plaintiff completely fails to address the three criteria mandated by *Mohasco*.

Despite this failure, the Court will attempt to address the arguments Plaintiff does make. Plaintiff argues that the fact that the tortious act or omission occurred outside of Tennessee is unimportant, and that McKinney's visits to Tennessee distinguish this case from those relied on by Defendants. As to the first point, Plaintiff is certainly correct that a tortious act outside the State does not preclude a finding of personal jurisdiction. But the cases on which it relies are inapposite: all involve out-of-state products that caused harm in Tennessee. *See Kroger Co. v. Dornbos*, 408 F.2d 813 (6th Cir. 1969) (shipping "poisoned" fish from Michigan to Tennessee that harmed Tennessee consumers sufficient to establish personal jurisdiction); *Gaston v. Aquaslide 'N' Dive Corp.*, 487 F. Supp. 16 (E.D.T.N. 1980) (jury could have found tortious conduct of designer of swimming pool slide had consequences in Tennessee); *McComb*, 622 S.W.2d at 824 (French manufacturer of crane "indirectly availed itself" of laws of Tennessee by placing product into national stream of commerce); *but see State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, at 755 n. 30 (Tenn. 2013) (referring to *McCombs* as an "outlier" in its personal jurisdiction

10

analysis). An extensive body of caselaw addresses personal jurisdiction arising from products placed in the stream of commerce, but that precedent simply does not apply here.

Plaintiff also takes issue with Defendants' reliance on *Dunn v. Cone*, 2021 WL 3671143, at *3 (6th Cir. March 2, 2021), noting that in *Dunn*, the non-resident defendant visited Tennessee four times in fifteen years, and did so only to accompany another person for custody exchanges and legal proceedings. The Court agrees that *Dunn* is factually distinguishable, but that does little for a Plaintiff that has made so slight a showing of purposeful availment.

It is true that when a defendant intentionally aims tortious conduct at a forum and the brunt of the harm is felt in that forum, jurisdiction may be proper based on the effects of the defendant's conduct in the forum state. *See Calder v. Jones*, 465 U.S. 783, 104 (1984).[4] But the Supreme Court has explained that "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, at 290 (2014). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.*

The Supreme Court's holding in *Walden* is fatal to Plaintiff's personal jurisdiction argument. Plaintiff alleges only that McKinney and/or Pleasurecraft induced Axial to breach its contract with Plaintiff, after visiting Plaintiff a few times in Tennessee. Defendants' allegedly tortious conduct does not connect them to the State of Tennessee, and any harm caused thereby was a coincidence of Plaintiff's residence here. Defendants "presumably would have been pleased to communicate with [Plaintiff] wherever the latter wished." *Int'l Tech. Consultants,* 107 F.3d at

---

[4] Plaintiff does not mention *Calder* or the effects test, but they nonetheless provide the legal framework for Plaintiff's argument. *See Kinzie Advanced Polymers, LLC v. Calyx Containers, LLC*, 2025 WL 2418908 (N.D. Ohio Aug. 21, 2025) ("When a claim involves intentional tortious conduct by an out-of-state defendant, purposeful availment may be shown through application of the *Calder*-effects test.").

11

395. On the record before the Court, Defendants did not purposefully direct their actions into Tennessee, advertise in Tennessee, attempt to exploit Tennessee's market for its products, produce anything in Tennessee, ship anything to Tennessee, or maintain a substantive, ongoing relationship with the State.

In short, "plaintiff cannot be the only link between the defendant and the forum." *Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018) (citation and punctuation omitted). In *Bulso*, for example, the Sixth Circuit affirmed the district court's finding that there was no basis for personal jurisdiction where a non-resident defendant engaged the Tennessee plaintiff to be his attorney, each of the defendants met with the plaintiff in Tennessee at least once, defendants communicated with the Tennessee plaintiff by phone and email, and later served summons and a complaint on the plaintiff in Tennessee. *Id.* at 350. As here, the plaintiff claimed these contacts ultimately harmed him in Tennessee. After *Walden v. Fiore*, the Sixth Circuit found this was not enough: "The defendants' contacts with Tennessee came from Bulso's law firm being located in Tennessee, not because the defendants sought to invoke the benefits and protections of Tennessee law." *Id.* at 350.

So too here. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. McKinney and Pleasurecraft's contacts with Tennessee have little to do with the State, and everything to do with the fact that Plaintiff is based here. Their contacts with Tennessee are too random and fortuitous to support a finding of purposeful availment. Without this essential showing, Plaintiff cannot show that specific jurisdiction is proper over these Defendants.

12

The Motion to Dismiss [Doc. 35] of McKinney and Pleasurecraft will be **GRANTED** and the claims against them **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction under Rule 12(b)(2).[5] Because personal jurisdiction is lacking, the Court does not reach Defendants' argument that Rule 12(b)(6) requires dismissal for failure to state a claim.

Plaintiff's Motion to Strike [Doc. 49] relates to an argument Defendant raised explicitly only in its reply brief. But that argument relates to whether the FAC states a claim for relief under Rule 12(b)(6). Accordingly, Plaintiff's Motion to Strike [Doc. 49 will be **DENIED** as moot.

## III.   REMAINING MOTIONS

Remaining for decision are Axial's Motion to Dismiss [Doc. 38] for improper venue and Plaintiff's Motion for Leave to Amend Complaint [Doc. 41]. In its Motion to Dismiss [Doc. 38], Axial argues venue is improper in the Eastern District of Tennessee due to forum selection clauses contained in the Asset Purchase Agreement and Independent Contractor Agreement, and the FAC should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). [*Id.*]. Plaintiff responded in opposition [Doc. 42], but also filed its Motion for Leave to Amend Complaint [Doc. 41]. Axial does not oppose amendment. [Doc. 47]. As to its own motion to dismiss, Axial's reply [Doc. 44] states: "The proposed Second Amended Complaint removes any reference to the Independent Contractor Agreement and therefore addresses the issues raised in Axial's Motion to Dismiss." [Doc. 44 at 1]. Axial therefore "concedes that, if the Court grants Blue Sky Marine's motion to amend, venue is proper in the Eastern District of Tennessee" as to Axial. [*Id.*].

---

[5] "[U]pon a determination that personal jurisdiction is lacking, a court should not dismiss a case on the merits, especially when it appears that another court with appropriate jurisdiction may resolve the issues between the parties." *Intera Corp. v. Henderson*, 428 F.3d 605, at 621 (6th Cir. 2005).

Axial does not oppose Plaintiff's Motion for Leave to Amend Complaint [Doc. 41] and concedes that the proposed amendment resolves the basis for its Motion to Dismiss [Doc. 38].[6] However, the proposed Second Amended Complaint asserts claims against Defendants that will be dismissed by this Memorandum Opinion and Order. Accordingly, Plaintiff's Motion for Leave to Amend Complaint [Doc. 41] will be **GRANTED IN PART**, and Plaintiff will be **ORDERED** to revise the proposed Second Amended Complaint to omit claims against Defendants McKinney and Pleasurecraft.

## IV.     CONCLUSION

Accordingly, it is **ORDERED** as follows:

- The Motion to Dismiss [Doc. 35] of Defendants Mark McKinney and Pleasurecraft Marine Engine Co., is **GRANTED** and Plaintiff's claims against these Defendants are **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(2).

- Plaintiff's Motion to Strike [Doc. 49] is **DENIED AS MOOT**.

- Plaintiff's Motion for Leave to Amend Complaint [Doc. 41] is **GRANTED IN PART**. Plaintiff is **ORDERED** to revise the Second Amended Complaint to remove the dismissed claims against McKinney and Pleasurecraft and remove the dismissed Defendants from the case caption.

---

[6] Axial purports to seek an order striking Plaintiff's allegations against Pleasurecraft and McKinney, asserting they are not proper Defendants in this case. [Doc. 44 at 1-2]. It is not clear to the Court how Axial has any authority or entitlement to seek relief on behalf of another defendant, and in any event, a motion cannot be made in a reply brief. Regardless, the Court's dismissal of Pleasurecraft and McKinney and simultaneous authorization of amendment clearly necessitates revision to the proposed Second Amended Complaint. Otherwise, it will assert claims against dismissed Defendants.

- Plaintiff is **CAUTIONED** that modifications to the proposed Second Amended Complaint must be consistent with this Order, which does not authorize substantive revisions as to any allegations or claims against remaining Defendant Axial.

- Plaintiff **SHALL FILE** the Second Amended Complaint, as revised, on or before **May 21, 2026**.

- The Motion to Dismiss First Amended Complaint [Doc. 38] by Axial Drive Systems, LLC, is **DENIED AS MOOT**.

- Defendants' earlier Motions to Dismiss [Docs. 16 & 20] the original Complaint [Doc. 1] are **DENIED AS MOOT**.

- The previously-imposed stay of discovery in this case is **LIFTED**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

15